John P. Margiotta (jmargiotta@fzlz.com)
Emily Weiss (eweiss@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, NY 10036
(212) 813-5900

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARTIER INTERNATIONAL AG and CARTIER, a division of RICHEMONT NORTH AMERICA, INC., | Civil Action No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| WHOLESALE JEWELRY, INC. d/b/a DIAMOND SOURCE, | |
| Defendant. | |

Plaintiffs Cartier International AG and Cartier, a division of Richemont North America, Inc. (together "Cartier" or "Plaintiffs"), for their Complaint against defendant Wholesale Jewelry, Inc. d/b/a Diamond Source ("Defendant"), allege as follows:

<u>SUBSTANCE OF THE ACTION</u>

1.    Cartier is one of the world's most renowned jewelry and luxury watch manufacturers. For decades, Cartier jewelry products have been highly regarded throughout the world as finely crafted works of art.

2.    All of the claims asserted herein arise out of and are based on Defendant's unlawful promotion, distribution, and sale of jewelry products that are imitations of Cartier's jewelry designs, designs that are protected under the trademark laws. In some cases,

Defendant's imitation jewelry is even engraved with the famous CARTIER mark, despite Defendant never having received authorization from Cartier, making such products counterfeits.

3.      Plaintiffs bring claims for counterfeiting and trademark and trade dress infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and related claims of trademark infringement and unfair competition under New York common law.  Plaintiffs seek injunctive and monetary relief.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b).  Supplemental jurisdiction exists over Plaintiffs' state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Defendant under New York Civil Practice Law and Rules §§ 301 and/or 302(a) because Defendant's place of incorporation and principal place of business is New York and because Defendant has transacted business in New York and has contracted to supply goods or services in New York in connection with matters giving rise to this suit.

6.      Venue is proper in this district under Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because Defendant resides in this district and because a substantial portion of the events giving rise to the claims occurred in this district.

**THE PARTIES**

7.      Plaintiff Cartier International AG is a public limited company organized and existing under the laws of Switzerland, having a principal place of business at Hinterbergstrasse 22, 6312 Steinhausen, Switzerland.

8.      Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 645 Fifth Avenue, New York, New York 10022.  Cartier, a division of Richemont North America, Inc., is the exclusive distributor of Cartier brand products in the United States.

9.      For the purposes of this Complaint, except where specified, the interests of Plaintiffs Cartier International AG and Cartier, a division of Richemont North America, Inc. herein are as a practical matter identical, and they are herein referred to individually and collectively as "Cartier."

10.      Upon information and belief, Defendant Wholesale Jewelry, Inc. d/b/a Diamond Source is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 29 West 47th Street, New York, New York 10036.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**I.      CARTIER'S BUSINESS AND IP RIGHTS**

    **A.      The CARTIER Brand and Business**

11.      Cartier is a world-famous supplier of fine jewelry and luxury watches sold under the CARTIER name and mark.

12.      Founded in 1847 by Louis-François Cartier, Cartier has built a reputation for fine craftsmanship in the jewelry field.  Through nearly 170 years of use, Cartier has built its CARTIER name and mark to be synonymous with high-quality, well-crafted jewelry.  Today, the

{F2559557.2 }

company offers for sale and sells a wide range of products, including timepieces, fine jewelry, and accessories.  Cartier's commitment to innovation in design and function, as well as the use of only the finest materials, has brought it renown as a leading maker of luxury goods.

13.     Among Cartier's most important assets is the intellectual property associated with its brand.  Among other protection, Cartier owns U.S. trademark registrations covering many of its world-famous marks and innovative jewelry designs.

B.     The CARTIER Mark

14.     Among the trademarks owned and used by Cartier is the world-famous CARTIER trademark (the "CARTIER Mark"), which has been used continuously in the United States in connection with the advertising and sale of fine jewelry and watches since at least as early as 1859.

15.     Cartier has invested significant time, money, and effort to advertise and promote the CARTIER Mark and the products sold thereunder, spending millions of dollars annually on such efforts.

16.     The combination of the highest quality products and extensive promotional efforts has kept the CARTIER Mark at the apex of the luxury products industry for decades, and has resulted in millions of dollars of sales year after year.

17.     As a result, the CARTIER Mark has acquired enormous value and has become extremely well known to the consuming public and trade as identifying and distinguishing the source of Cartier's products exclusively and uniquely.  The CARTIER Mark represents enormous goodwill and has become famous throughout the United States.

18.     The CARTIER Mark is the subject of numerous federal trademark registration, including, but not limited to, the following:

{F2559557.2 }

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| CARTIER | 411,239 | January 9, 1945 | *Inter alia*, bracelets, earrings, finger rings |
| CARTIER | 759,202 | October 29, 1963 | *Inter alia*, articles of jewelry for personal wear |
| *Cartier* | 411,240 | January 9, 1945 | Articles of jewelry for personal wear, namely, *inter alia*, bracelets, earrings, finger rings |
| *Cartier* | 4,178,047 | July 24, 2012 | *Inter alia*, jewelry |

19.     Printouts detailing the registration information for the above marks are attached hereto as Exhibit A.  These registrations are all valid, subsisting, and in full force and effect. Moreover, all of the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Cartier's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

C.     Cartier's LOVE Collection and Related Intellectual Property Rights

20.     One of Cartier's most well-known and sought-after jewelry lines is known as the LOVE collection, which consists of a wide variety of jewelry products, each with the distinctive appearance of a flat metal band in white gold, yellow gold, or pink gold punctuated by simulated screw head designs and/or diamonds (the "LOVE Trade Dress"), as shown below:



21.     The first item in the LOVE collection was the LOVE bracelet, designed for Cartier by Aldo Cipullo in 1969.

{F2559557.2 }

22.     Since its introduction, the LOVE bracelet has adorned the wrists of many famous celebrities, including 1970s couples such as Elizabeth Taylor and Richard Burton, Nancy and Frank Sinatra, Cary Grant and Dyan Cannon, and Ali McGraw and Steve McQueen.  Today, the LOVE bracelet continues to be favored by celebrities such as Kylie Jenner

23.     In addition to the LOVE bracelet, Cartier manufactures, promotes and sells a number of jewelry designs within the LOVE collection and incorporating the LOVE Trade Dress, including, but not limited to, earrings, rings, and necklaces.

24.     The LOVE Trade Dress is the subject of various federal trademark registrations owned by Cartier, including the following:

| Mark | Reg. No. | Reg. Date | Registered Goods |
|------|----------|-----------|------------------|
| LOVE BRACELET | 1,005,286 | February 25, 1975 | Jewelry, namely, bracelets |
|  | 1,372,423 | November 26, 1985 | Bracelets |
|  | 3,162,410 | October 24, 2006 | Jewelry, namely, *inter alia*, bracelets, rings, earrings |
|  | 3,776,794 | April 20, 2010 | Jewelry, namely, *inter alia*, rings, bracelets, earrings, made of previous metals |

25.     Printouts detailing the registration information for the above marks are attached hereto as Exhibit B.  These registrations are all valid, subsisting, and in full force and effect. Moreover, all of the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Cartier's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided

{F2559557.2 }

by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).  Collectively, the marks shown in

Exhibit B are herein referred to as the "LOVE Marks."

26.     Cartier has extensively advertised and promoted the products manufactured, sold,

and offered for sale under the LOVE Marks.  The LOVE Marks immediately indicate Cartier as

the exclusive source of products to which they are affixed, and signify goodwill of incalculable

value.

27.     Cartier's products sold under the LOVE Marks are available throughout the

United States, both through Cartier's own boutiques and in additional authorized retail stores.

Cartier sells millions of dollars of products under the LOVE Marks each year.

28.     The products distributed by Cartier under the LOVE Marks are of the highest

quality and are subject to exacting quality control standards.  Cartier takes pains to ensure the

quality of its products by monitoring their production and distribution.  As a result of these

efforts, Cartier has developed a reputation for providing the highest-quality products under the

LOVE Marks and consumers have come to expect that products bearing the LOVE Marks are of

the highest quality and workmanship.

29.     As a result of Cartier's significant investment of time, money, and effort

promoting the LOVE Marks and its widespread sales, the LOVE Marks have acquired enormous

value and have become extremely well known to the consuming public and trade as identifying

and distinguishing the source of Cartier's products exclusively and uniquely.  As a result, the

LOVE Marks have come to represent enormous goodwill.

## II.     DEFENDANT'S UNLAWFUL ACTIVITIES

30.     Defendant is in the business of offering for sale and selling jewelry.  Defendant

operates Wholesale Jewelry, Inc. d/b/a Diamond Source jewelry store in New York, New York.

{F2559557.2 }

31.     On information and belief, Defendant has manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported bracelets and rings bearing the LOVE Trade Dress and the LOVE Marks, which were not manufactured, authorized, or approved by Cartier. Certain of these products also feature the CARTIER Mark.

32.     In March 2018, Cartier's agent visited Defendant's jewelry store.  Cartier's agent observed bracelets and rings bearing the LOVE Trade Dress and the LOVE Marks.  Certain of the bracelets also featured the CARTIER Mark.  Defendant was offering these bracelets for sale for amounts ranging from $6,000 to $10,000.

33.     Approximately one week later, one of Cartier's agents returned to Defendant's jewelry store and purchased one of the imitation LOVE bracelets for $6,000, which is shown below:

 

34.     Upon information and belief, Defendant knows, and at all relevant times knew, that the products it is selling are unlawful imitations of Cartier's jewelry products, and it advertises them as such.

35.     Indeed, Defendant has actual knowledge of Cartier's rights.  On January 31, 2018 and February 14, 2018, Cartier sent Defendant cease-and-desist letters requesting that Defendant

immediately cease its unlawful activities and voluntarily surrender the counterfeit/infringing

jewelry products.  Defendant has not responded to either of Cartier's cease-and-desist letters.

36.     On information and belief, Defendant has sold jewelry pieces that bear imitations

of the CARTIER Mark and the LOVE Trade Dress and LOVE Marks to customers other than

Cartier's agent.

37.     Defendant is not related to or affiliated with Cartier in any way.  Defendant has

not sought or received a license or authorization from Cartier for any purpose whatsoever,

including for the acts described herein.

38.     Defendant's counterfeit and infringing jewelry products directly compete with

Cartier's products.

39.     Defendant's sale of counterfeit and infringing jewelry products unlawfully wrests

from Cartier control over its reputation and, upon information and belief, is unjustly enriching

Defendant.

40.     Upon information and belief, Defendant's activity described herein is

intentionally fraudulent, malicious, willful, and wanton.

41.     Defendant's unauthorized acts as described herein have caused and will continue

to cause irreparable damage to Cartier and its business and goodwill unless restrained by this

Court.

**FIRST CLAIM FOR RELIEF:**
**TRADEMARK COUNTERFEITING AND INFRINGEMENT OF REGISTERED**
**TRADEMARK AND TRADE DRESS IN VIOLATION OF 15 U.S.C. § 1114(1)**

42.     Cartier repeats and incorporates herein by reference each of the foregoing

allegations.

43. The CARTIER Marks and the LOVE Marks are distinctive and of incalculable value, and are associated in the public mind with Cartier's goods and services of the highest quality.

44. Without Cartier's authorization or license, and, upon information and belief, with knowledge of Cartier's prior rights in the CARTIER Marks and LOVE Marks, Defendant has manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported counterfeit CARTIER jewelry under and/or bearing the following CARTIER Marks and LOVE Marks, or marks highly similar thereto:  the CARTIER word mark, U.S. Registration No. 411,239; the CARTIER word mark U.S. Registration No. 759,202; the stylized CARTIER word mark, U.S. Registration No. 411,240; the stylized CARTIER word mark, U.S. Registration No. 4,178,047; the trade dress in the screw head design, U.S. Registration No. 3,162,410; the trade dress in the LOVE bracelet, U.S. Registration No. 1,372,423; and the trade dress in the LOVE bracelet, U.S. Registration No. 3,776,794.

45. Upon information and belief, by virtue of Cartier's extensive and ongoing use and advertising of the CARTIER Marks and LOVE Marks, Defendant was on actual notice of Cartier's exclusive rights in the CARTIER Marks and LOVE Marks.  In addition, Cartier's federal registrations put Defendant on constructive notice of Cartier's exclusive rights in the CARTIER Marks and LOVE Marks, and the cease-and-desist letters put Defendant on actual notice.

46. Defendant's manufacturing, advertisement, offering for sale, sale, distribution, import, and/or export of counterfeit CARTIER products under and/or bearing trademarks and trade dresses that are identical or highly similar to the CARTIER Marks and LOVE Marks is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's

{F2559557.2 }

goods.  As a result of Defendant's unauthorized use of Cartier's federally registered trademarks and trade dresses, and/or trademarks and trade dresses that are identical or highly similar to Cartier's federally registered trademarks and trade dresses, the public is likely to believe that Defendant's goods have been manufactured and/or approved by Cartier.  Such use falsely represents Defendant as being legitimately connected with and/or authorized by Cartier, and places beyond Cartier's control its own reputation and ability to control the use of the CARTIER Marks and LOVE Marks and the quality of the products bearing those marks.

47.    Defendant's infringement of the CARTIER Marks and LOVE Marks is willful, intended to reap the benefit of the goodwill of Cartier, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48.    Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

### SECOND CLAIM FOR RELIEF:
### UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)

49.    Cartier repeats and incorporates herein by reference each of the foregoing allegations.

50.    The CARTIER Marks, the LOVE Marks, and the LOVE Trade Dress are distinctive and of incalculable value, and are associated in the public mind with Cartier and goods and services of the highest quality.

51.    Without Cartier's authorization or license and, upon information and belief, with knowledge of Cartier's prior rights in the CARTIER Marks, LOVE Marks, and LOVE Trade Dress, Defendant manufactured, advertised, offered for sale, sold, distributed, imported, and/or

{F2559557.2 }

exported counterfeit and infringing products under and/or bearing the CARTIER Mark and the LOVE Trade Dress and LOVE Marks.

52.    Defendant's conduct is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection, or association between Defendant and Cartier, and/or as to Cartier's sponsorship or approval of Defendant's goods, services, and/or commercial activities.

53.    As a result of the foregoing, Defendant has falsely designated the origin of its products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.    Upon information and belief, Defendant's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

55.    Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF:**
**DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)**

56.    Cartier repeats and incorporates herein by reference each of the foregoing allegations.

57.    The CARTIER Mark is a distinctive, federally registered trademark.  As a result of Cartier's extensive and exclusive use of the CARTIER Mark in connection with its products, the CARTIER Mark has become famous and is widely recognized among the consuming public as a designation of source of Cartier's goods.  The CARTIER Mark became famous long before Defendant's infringing activities commenced.

58.    Defendant's commercial use of marks identical to the CARTIER Mark for goods that are not manufactured or controlled by, affiliated with, or sponsored by Cartier has diluted and is continuing to dilute the distinctive quality of the CARTIER Mark by lessening the

{F2559557.2 }

capacity of those marks to exclusively identify and distinguish Cartier and its goods, and by tarnishing them through association with Defendant's goods, which are of poor quality and workmanship.

59.     Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of the CARTIER Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

60.     Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**COMMON LAW TRADE DRESS INFRINGEMENT**

61.     Cartier repeats and incorporates herein by reference each of the foregoing allegations.

62.     Defendant's aforesaid conduct constitutes common law trade dress infringement under the common law of the State of New York.

63.     Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF:**
**COMMON LAW UNFAIR COMPETITION**

64.     Cartier repeats and incorporates herein by reference each of the foregoing allegations.

65.     Defendant's aforesaid conduct constitutes common law unfair competition with Cartier under the common law of the State of New York.

13

66.     Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1.      Permanently enjoining and restraining Defendant, its agents, servants, employees, successors, and assigns and all those in active concert or participation with them, from:

(a)     Imitating, copying, or making unauthorized use of the CARTIER Mark, Love Trade Dress, and LOVE Marks, including, without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, or exporting any products bearing the CARTIER Mark, Love Trade Dress, or LOVE Marks or any other confusingly similar mark or design;

(b)     Using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendant is associated with Cartier or that any product manufactured, distributed, displayed, advertised, promoted, offered for sale, sold, imported, or exported by Defendant is in any manner associated or connected with Cartier, is a genuine product of Cartier, or is authorized, licensed, sponsored, or otherwise approved by Cartier;

(c)     Engaging in any other activity constituting unfair competition with Cartier, or constituting an infringement of the CARTIER Mark, Love Trade Dress, or LOVE Marks;

(d)     engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Cartier's trademarks, trade dresses, or trade names; and

(e)     Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)-(d) above, inclusive.

{F2559557.2 }

2.      Directing that Defendant turn over to Plaintiffs for impoundment and eventual destruction, without compensation to Defendant, all materials in its possession or control that violate the provisions of paragraphs 1(a)-(d) above, along with all articles by means of which such unauthorized copies may be reproduced.

3.      Directing that Defendant, at its own expense, recall from any distributors, retailers, vendors, or others to whom it has distributed materials that violate the provisions of paragraph 1(a)-(d) above, and that Defendant deliver up to Plaintiffs for destruction all materials returned to it.

4.      Directing that Defendant, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of the injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

5.      Requiring Defendant to account for all gains, profits, and advantages derived from its unlawful conduct.

6.      Granting Plaintiffs monetary relief, including Defendant's profits; Cartier's actual damages; trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a); or, if Cartier elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(b) & (c).

7.      Granting Plaintiffs punitive damages.

8.      Granting Plaintiffs their full costs, including, as part of such costs, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

9.      Granting Plaintiffs both pre-judgment and post-judgment interest on each and every monetary award.

{F2559557.2 }

10.     Granting Plaintiffs such other and further relief as the Court may consider equitable, just, and proper.

Dated:  July 18, 2018                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
     John P. Margiotta
     Emily Weiss
4 Times Square, 17th Floor
New York, NY 10036
Tel: (212) 813-5900
jmargiotta@fzlz.com
eweiss@fzlz.com

*Attorneys for Plaintiffs*

{F2559557.2 }